UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUIS COPE<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SSI-SSA, BEATRICE DISMAN, HHS ADMINISTRATION COMM'R, POPE PIOUS XI SAINT MARY SUB-ACCUTE FACILITIES, ST. MICHAEL'S HOSPITAL, MID-ATLANTIC PROGRAM SERVICE<br><br>　　　　　　　　　　Defendant. | Civil Action No. 11-6569 (KM)<br><br><br>OPINION |

**MCNULTY**, District Judge

　　This matter comes before the Court on Plaintiff Louis Cope's motion for default judgment and contempt of court. Defendant St. Mary's[1] has cross-moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) for insufficient service of process and lack of personal jurisdiction, and pursuant to Rules 12(b)(1) and 12(b)(6) for failure to invoke federal subject matter jurisdiction and failure to state a claim upon which relief can be granted. Defendant Social Security Administration ("SSA")[2] has cross-moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

　　After reviewing Plaintiff's Amended Complaint and miscellaneous pleadings, as well as the Court's case file, I cannot discern a viable claim for relief or a basis for entry of a default judgment. Accordingly, for the reasons discussed below, Plaintiff's Motion for Default Judgment is **DENIED** and Defendants' Motions to Dismiss are **GRANTED**. The dismissal of Plaintiff's Complaint is **WITHOUT PREJUDICE**; Mr. Cope is therefore granted leave to file

---

[1] It appears that South Center Street Nursing, LLC, does business as Pope John Paul Pavilion at St. Mary's Life Center, and that the nongovernmental defendants are erroneously designated in the caption. For ease of reference, I will simply refer to these defendants as "St. Mary's."

[2] The Amended Complaint names as defendants the Commissioner and various entities within the Social Security Administration. For ease of reference, I will refer to these defendants as the SSA.

an amended complaint on or before April 1, 2013. If he does not do so, the Complaint will be dismissed with prejudice.

## I.   Procedural History

Mr. Cope, *pro se,* first filed a complaint in November 2011, but that complaint was dismissed for failure to pay the filing fee. *See* Order of Judge Cecchi, November 18, 2011, ECF No. 3. On reconsideration, Mr. Cope was granted leave to proceed *in forma pauperis* and to file an amended complaint. *See* ECF No. 9. He filed an Amended Complaint on March 28, 2012, ECF No. 10 ("Complt."), but apparently failed to obtain or serve summonses. By letter dated May 17, 2012, ECF No. 12, Defendant St. Mary's informed the Court that it had been served with Mr. Cope's handwritten complaint, but could not access the electronic case file because it was filed under seal.[3] St. Mary's also reported that, according to the Clerk's Office, a summons was never issued. At the request of counsel for St. Mary's, Magistrate Judge Dickson held an in-person status conference in June 2012, directed the Clerk's Office to issue summonses for Cope's Amended Complaint and directed the U.S. Marshals to execute service. It appears that service was effectuated on Defendant SSA, *see* ECF No. 27, but not on Defendant St. Mary's, *see* ECF No. 35.

On August 1, 2013, Mr. Cope filed a motion for Default Judgment and Contempt of Court, ECF No. 22. Thereafter, Defendant St. Mary's moved to dismiss on August 20, 2012, ECF No. 25, and Defendant SSA, after requesting an extension of time to answer, filed a motion to dismiss on October 1, 2012, ECF No. 32.

Mr. Cope has filed several responses in handwritten letter form. On August 23, 2012, he filed "Objection(s)" to the motion to dismiss of St. Mary's. *See* ECF No. 26. On November 29, 2013, he filed a document entitled, "2nd Amended Complaint, 2nd Objection Letter," ECF No. 38. After reviewing Mr. Cope's November 29th filing, the Court entered an order (1) directing Defendant SSA to provide proof of service of its motion to dismiss; (2) directing Mr. Cope to cease filing amended complaints without leave of court and (3) directing Mr. Cope to submit in writing a clear response to Defendant SSA's motion to dismiss by January 22, 2013. *See* ECF No. 39. Mr. Cope has submitted two letters in response to the Court's order: the first was received on January 2, 2013, *see* ECF No. 42, and the second on February 15, 2013, *see* ECF No. 43.

---

[3]   Mr. Cope's Amended Complaint (referred to herein as the "Complaint") was docketed as a Social Security matter and was therefore filed under seal pursuant to Local Civil Rules 5.2(f) and 5.3.

## II. Factual Background

Mr. Cope appears to allege distinct but related claims against the SSA and St. Mary's arising from the time period when Mr. Cope was a resident at the St. Mary's sub-acute nursing facility.

Mr. Cope began receiving SSI benefits in September 2009 and continued to receive SSI payments while he was a resident at St. Mary's. The length of his stay at St. Mary's is not clear, but according to the SSA, it occurred in or around March 2011. *See* Declaration of Julio Infiesta, Assistant Regional Commissioner for Management and Operations Support for the SSA, October 1, 2012, ECF No. 32-1 ("Infiesta Decl."). During his stay at St. Mary's, Mr. Cope was due less money from the SSA than he had been receiving, but the SSA did not immediately reduce his payments. As a result, he began to accumulate "excess resources." Pursuant to SSA regulations, once his resources exceeded $2,000, Mr. Cope was no longer eligible to receive SSI benefits,[4] and the SSA eventually suspended his monthly payments. The SSA maintains that the overpayments to Mr. Cope from March 2010 through January 2012 totaled $15,508.98.

Mr. Cope alleges that the SSA discovered that he had "excess resources" because St. Mary's improperly disclosed this to them. According to Mr. Cope, St. Mary's staff rifled through his clothes pockets, found documents with his banking information, and turned over that information to the SSA. Mr. Cope maintains that these actions of St. Mary's violated his privacy rights and "whistle blower laws." In addition, Mr. Cope claims that while he was a resident at the St. Mary's facility, the bill for a storage unit he kept was not paid and as a result, his items were emptied out and put up for auction. Mr. Cope had to

---

[4] Subchapter XVI of the Social Security Act provides for payments to disabled persons of limited income and resources, subject to certain eligibility requirements. *See Cannuni v. Schweiker*, 740 F.2d 260, 263 (3d Cir. 1984) (citing 42 U.S.C. § 1382b(a)). Mr. Cope is limited to "excess resources" of no more than $2,000 pursuant to 42 U.S.C. § 1382(a)(3)(B) (2005). "Resources" are not defined by the statute, but the Secretary of the SSA has promulgated regulations providing in relevant part:

> (a) *Resources; defined.* For purposes of this subpart L, resources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.
> . . . .
> (b) *Liquid resources.* Liquid resources are cash or other property which can be converted to cash within 20 days....

*Supplemental Sec. Income-Termination of Benefits Due to Excess Res.*, SSR 95-4C (S.S.A Aug. 7, 1995) (citing 20 C.F.R. § 416.1201(a)–(c) (1993)).

3

pay $320 to stop the auction and retrieve his items; he includes this figure as part of his claim for damages against St. Mary's.

Mr. Cope maintains that he was unaware that the SSA would cease paying benefits to recipients who had resources in excess of $2,000, that such a rule is "severe and repulsive," and that it is discriminatory because it is enforced against only SSI recipients, not other recipients of Social Security benefits. *See* Complt. at 2. Mr. Cope also maintains that he has tried to appeal the suspension of his benefits and is willing to go before an ALJ, but has received no response from the SSA. *See id.* at 3.

### III. Legal Standards

#### A. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, a party is susceptible to default judgment when he "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . . ." Fed. R. Civ. P. 55(a). Two prerequisites must be met before a defendant can be found in default: first, the plaintiff must execute proper service of a summons and complaint, and second, the defendant must fail to file an answer or motion within the time frame provided by the Federal Rules. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985) (instructing that "[a] default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void," and finding that the district court erred as a matter of law by refusing to set aside a default judgment where the time for filing an answer had not expired, and [where there was] no evidence that the complaint was properly served").

If these prerequisites—proper service and failure to plead or otherwise defend within the requisite time period—are met, then "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

#### B. Dismissal pursuant to Rule 12(b)(5) For Insufficient Service of Process

A motion authorized by Federal Rule 12(b)(5) charging insufficient service of process "permit[s] the defendant to challenge departures from the proper procedure for serving the summons and complaint. . . . A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." § 1353 Motions to Dismiss—Insufficiency of Process and Service of Process, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.)

The procedural requirements for proper service are set forth in Rule 4 of the Federal Rules of Civil Procedure which requires that a summons be served with a copy of the complaint. Rule 4 provides in relevant part:

> [(a)(1)] A summons must:
> (A) name the court and the parties;
> (B) be directed to the defendant;
> (C) state the name and address of the plaintiff's attorney or--if unrepresented--of the plaintiff;
> (D) state the time within which the defendant must appear and defend;
> (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
> (F) be signed by the clerk; and
> (G) bear the court's seal.
>
> (b) Issuance. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons--or a copy of a summons that is addressed to multiple defendants--must be issued for each defendant to be served.
> (c) Service.
> (1) *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.
> (2) *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.
> (3) *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.
> . . .
>
> (m) Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4

"If a defendant seeks dismissal of the plaintiff's complaint pursuant to Rule 12(b)(5) on the ground that service of process was insufficient or ineffective, it must include that defense either in its answer or together with any other Rule 12 defenses raised in a pre-answer motion." *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 194 (3d Cir. 1998)

### C. Dismissal pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

Federal Civil Rule 12(b)(1) authorizes a defendant to object to a plaintiff's complaint due to the court's lack of subject matter jurisdiction over the claim. "[A]s is universally recognized by the federal courts, the objection presented by a motion under Rule 12(b)(1) challenging the court's subject matter jurisdiction is that the district judge has no authority or competence to hear and decide the case before it." § 1350 Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.).

There are several grounds for objecting to a federal court's authority to hear and decide a case. "A Rule 12(b)(1) motion most typically is employed when the movant believes that the claim asserted by the plaintiff does not involve a federal question, and there is no diversity of citizenship between the parties or, in a diversity of citizenship case, the amount in controversy does not exceed the required jurisdictional amount. . . . [T]he Rule 12(b)(1) motion . . . also may be appropriate when the plaintiff has failed to exhaust administrative procedures that have been established, typically by statute, as a prerequisite to his bringing suit. . . ." *See id.*

Both of these grounds for objection are relevant here. Defendant St. Mary's asserts that that Plaintiff's claims do not involve a federal question, as required by 28 U.S.C. § 1331,[5] nor, alternatively, is there diversity of citizenship between the parties, as required by 28 U.S.C. § 1332.[6] Defendant SSA maintains that Mr. Cope has failed to exhaust the administrative remedies provided by the Social Security Administration and that he has not obtained a final decision that is reviewable by a federal district court.

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides the exclusive basis for judicial review of decisions issued by the Social Security Administration. § 405(g) provides in relevant part:

---

[5] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[6] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different states." 28 U.S.C. § 1332.

> Any individual, *after any final decision of the Commissioner of Social Security* made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . . .

42 U.S.C. § 405 (emphasis added).

Thus, Federal District Courts have subject matter jurisdiction over claims arising under the Social Security Act *only after* a claimant has exhausted administrative remedies and obtained a final decision of the Commissioner.

### D. Dismissal pursuant to Rule 12(b)(6) for Failure to State a Claim

In order for a pleading, such as Plaintiff's Amended Complaint, to state a valid claim for relief, it must contain:

(1) A short and plain statement of the grounds for the court's jurisdiction;
(2) A short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) A demand for the relief sought.

*See* Fed. R. Civ. P. 8(a).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

When considering a *pro se* complaint, the court must construe it liberally in favor of the plaintiff. *Erikson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Liberal construction does not, however, require the Court to credit a pro se plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Nevertheless, a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts in support of a claim that would entitle the plaintiff to relief. *See Millhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir. 1981). I have reviewed Mr. Cope's pleadings carefully, in the liberal spirit of *Haines,* and have attempted to look past any technical deficiencies to discern any viable basis for a claim.

IV. **Discussion**

   A. **Plaintiff's Motion for Default Judgment and Motion of Defendant St. Mary's to Dismiss For Insufficient Service of Process**

Mr. Cope moved for default judgment as to both St. Mary's and SSA on August 1, 2012. Defendants would be susceptible to default judgment only if they (1) were properly served, and (2) failed to answer or move within the time period permitted by the Federal Rules. *See* discussion *supra* at § III.A-B. St. Mary's, as a private party, had 21 days from service of the complaint and summons to file its answer or move to dismiss. *See* Fed. R. Civ. P. 12(1)(A)(i). The SSA, a governmental entity, had 60 days to answer or move. *See* Fed. R. Civ. P. 12(1)(B). The Court's records indicate that, following the status conference with the Magistrate Judge, the U.S. Marshals ("USM") sent a letter to Mr. Cope on June 14, 2012 enclosing USM form 285 (a control document for process served by the Marshal) and instructing Mr. Cope to complete one form for each defendant and to return them to the U.S. Marshal's Office for execution of service. *See* USM Letter of June 14, 2012, ECF No. 18.

   *1. Motion for Default: SSA*

On July 5, 2012, Mr. Cope executed a USM form 285 for Defendant SSA. Service of process was effected on July 16, 2012. *See* ECF No. 20, and Motion for Extension of Time to File Answer by SSA, September 13, 2012, ECF No. 30. The return date for SSA's responsive pleading was initially set for September 17, 2012. *See id.* Defendant SSA requested an extension of that deadline, which was granted until October 1, 2012. *See* ECF No. 30. Consequently, SSA was obligated either to file an answer to the Complaint or to file a motion to dismiss it by that date. *See* Fed. R. Civ. P. 12(a) & (b).

8

That is what SSA did. On October 1, 2012 it filed the motion to dismiss the complaint that is now before the Court. *See* ECF No. 32. In short, SSA has not defaulted; there is no basis to enter a default judgment against it.

### 2. *Motion for Default and Cross-Motion to Dismiss: St. Mary's*

Although St. Mary's did receive by certified mail a copy of Mr. Cope's Amended Complaint "on or about April 17, 2012," it maintains that it was never properly served with a summons accompanied by a copy of the Complaint, as required by Rule 4, Fed. R. Civ. P. *See* Declaration of Stuart Weinberger, August 20, 2012, ECF No. 25-1 ("Weinberger Decl.") ¶ 4. At the status conference, Magistrate Judge Dickson directed Mr. Cope to file the necessary forms so that the U.S. Marshals could effect proper service.

Docket entry 37 appears to be a copy of the relevant USM form 285, signed by Mr. Cope on June 28, 2012, and date-stamped "received" by the U.S. Marshals' Service on July 3, 2012. In the form, Mr. Cope provided two addresses for service: "South Street Nursing, LLC, 33-44 Center St. Orange, New Jersey," and "Stuart Weinberger Esq., Goldberg & Weinberger LLP, 630 Third Avenue, 18th Fl., New York, New York, 10017." The form further indicates that service was attempted on August 6, 2012, but there is a "remark" on the form indicating that the address provided was "bad" and "does not exist." The form was returned to the Clerk's office on October 25, 2012. Docket entry 35 was entered, indicating that the summons as to Defendant St. Mary's was returned unexecuted.

Rule 12(a), Fed. R. Civ. P., provides that a private defendant has "21 days from being served with the summons and complaint" to file a responsive pleading. Because Defendant St. Mary's was never properly served, the clock on its response time never began to run.[7] There is thus no basis to enter a default judgment against St. Mary's.

Strictly speaking, the Complaint might be dismissed for failure to effectuate service. *See* Fed. R. Civ. P. 12(b)(5).[8] It is clear, however, that Mr. Cope made a good faith effort to execute service within 120 days of the status

---

[7] Even if St. Mary's had been served on August 6, 2012, Plaintiff's motion for default judgment would have been premature, because it was filed on August 20, 2012, when St. Mary's still had seven days to respond (and, under Local Rule 6.1(b), was entitled to one automatic 14-day extension).

[8] St. Mary's moved to dismiss for failure to effectuate service pursuant to Rule 12(b)(5). It also cited Rule 12(b)(2), which authorizes a motion to dismiss for lack of jurisdiction over the defendant's person. No independent analysis is required, because lack of service is the only ground asserted for lack of personal jurisdiction.

9

conference with Magistrate Judge Dickson. While the address he provided for South Center Street Nursing, LLC was incorrect, the address provided for its counsel and representative, Mr. Weinberger, apparently was correct. Mr. Cope, who is *pro se,* does not have access to the Court's electronic filing system, and may not have known that service on St. Mary's had failed. St. Mary's does not deny that it possesses a copy of the Complaint.

The only likely result of a Rule 12(b)(5) dismissal would be a further attempt at service, and further delay. St. Mary's, while contesting service, has also filed substantial motions to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. I will therefore move on to the merits of those motions to dismiss.

### B. Motion of Defendant St. Mary's to Dismiss pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction and pursuant to Rule 12(b)(6) for Failure to State a Claim

Setting aside the technical issue of service, there are several fatal flaws in Mr. Cope's claims against Defendant St. Mary's. Mr. Cope alleges that staff at St. Mary's (and/or, apparently, St. Michael's Hospital),

> either separately or jointly, violated Plaintiff's privacy rights by taking or keeping Plaintiff's shirts and went through his pockets and found his saving and checking accounts & their respective acct. nos and copied them and then returned his shirts to him. They did this <u>without</u> his approvals. . . . [They] went through his pockets to obtain privileged information for their own use and profit either alone or in cohort with St. Michaels Hosp., and then as retaliation and in violation of whistle-blower laws, gave it to SSA-SSI of Jersey City and of Philadelphia both of which demand $15,000 & $14,000 and cancelled his $739.00 for Feb, Mar, Apr, of 2012 and for every month thereafter along with $705.25 dollars for Feb & May of 2011. Additionally, they prevented this Plaintiff from paying his storage bill and the boxes [were] set-up for disposal by an auction to the public; to stop auction, Plaintiff had to pay $320.00.

Complt. at 2. Essentially, Mr. Cope is alleging that the St. Mary's staff violated his privacy rights while he was a resident there, and that the cutoff or reduction of his SSI benefits resulted.

As a matter of law, Mr. Cope has not pleaded a viable federal claim. He does not identify what federal "privacy right" the hospital staff allegedly violated; setting aside the apparent lack of state action, there is no immediately apparent Constitutional right to privacy that could be asserted against a hospital for searching his clothing. *Compare Roe v. Wade,* 410 U.S. 113, 152-

53 (1973) (discussing scope of Constitutional right to privacy, relating chiefly to matters of family and procreation). While New Jersey has a privacy tort, and recognizes a right to "informational privacy," such as "a name, address, or social security number, and generated information, such as financial or credit card records, medical records, and phone logs . . ." *State v. Reid*, 389 N.J. Super. 563, 570, 914 A.2d 310, 314 (App. Div. 2007) *aff'd and modified*, 194 N.J. 386, 945 A.2d 26 (2008), such a violation would not give rise to a federal cause of action; it does not arise "under the Constitution, laws, or treaties of the United States" as required by 28 U.S.C. § 1331, nor is there diversity of citizenship between Mr. Cope and Defendant St. Mary's, *see* 28 U.S.C. § 1332. If Mr. Cope wants to pursue a state law claim, he will need to do so in state court. He seems to have the concept of a "whistleblower" backwards; *i.e.*, his complaint seems to be that St. Mary's "blew the whistle" on him, not the other way around. *Compare* N.J. Stat. Ann. § 34:19-1 *et seq.* (CEPA statute, protecting employee whistleblowers from retaliation). Finally, the claim that Mr. Cope was "prevented" from paying his bill at a third-party storage facility is unexplained and completely unconnected to anything St. Mary's employees are alleged to have done.

In addition, Mr. Cope has not pleaded any facts rising above the level of speculation to support any arguably existing legal claim. He pleads no underlying facts and circumstances to support the inference that the claimed theft or invasion of privacy ever occurred; at best, he is alleging that the staff had the opportunity or ability to access the contents of his pockets, a situation probably inherent in the nursing care environment. He seems to be assuming from the suspension of SSI benefits that the staff must have informed on him. Any assumed link between the suspension of his SSI benefits and his stay at St. Mary's, however, is speculative and tenuous in the extreme. Mr. Cope began receiving SSI benefits in 2009, and it is certain that SSA was in possession of his social security number and other information that would allow them to track his status. At any rate, *he* was legally obligated to report his resources and admission to St. Mary's to the SSA.[9] It is difficult to imagine what

---

[9] Pursuant to 20 C.F.R. § 416.708, all SSI recipients are required to report to the Administration, *inter alia*, "A change in income," *id.* § 416.708(c), "A change in resources," *id.* § 416.708(d), and "Admission to or discharge from a medical treatment facility, public institution, or private institution" *id.* § 416.708(k). Mr. Cope claims that he was unaware of the "excess resources" limitation, but whether or not he may be eligible for a waiver of recovery pursuant 20 C.F.R. § 416.550 is a factual inquiry that an ALJ must address before it is ripe for judicial review in this Court. *See* discussion *infra* at § IV.C. Pursuant to 20 C.F.R. § 416.552 an SSI recipient who has received overpayments may be eligible for a waiver of recovery of the payment if it is determined that he is "without fault" *and* that recovery would defeat the purpose of the Act or would be inequitable. 20 C.F.R. § 416.552. *See also Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983):

cognizable damages could arise from all this; the theory of the Complaint seems to be that Mr. Cope could have gone on receiving benefits to which he was not entitled for a longer time if St. Mary's had not told SSA the truth. Even under a liberal construction of Mr. Cope's *pro se* pleadings, *see Haines*, 404 U.S. at 520-21, these factual allegations are not sufficient to "raise [his] right to relief above a speculative level." *See Twombly*, 550 U.S. at 570.

The motion of Defendant St. Mary's to dismiss the complaint for lack of federal subject matter jurisdiction and for failure to state a claim will therefore be granted.

### C. Defendant SSA's Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1)

Defendant SSA moves to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R. Civ. P. SSA maintains that Plaintiff has failed to exhaust his administrative appeal remedies and has not obtained a "final decision" of the Commissioner of Social Security ("Commissioner"). Such a final decision is a prerequisite to judicial review. Title 42, United States Code, section 405(g) & (h) clearly so provides. Subsection (h) states that "[n]o findings of fact or decision of the Commissioner shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Subsection (g) explicitly authorizes judicial review only of a "final

---

[T]he Secretary may require a person who has received an overpayment to refund the amount paid in excess of the correct amount. The recovery of an overpayment by the Secretary will be waived only if the recipient can show: (1) that he was without fault and (2) that recovery would defeat the purpose of the Act or would be inequitable. Fault may be found if the recipient: (1) makes a statement which he knows or should have known to be incorrect; (2) fails to furnish information which he knows or should have known to be material; or (3) accepts a payment which he knew or could have been expected to know was incorrect. No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault. The fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault") (citing 20 C.F.R. § 416.552 (1982).

*Accord Harrison v. Heckler*, 746 F.2d 480 (9th Cir. 1983) (same); *Woods v. Shalala*, 884 F. Supp. 156, 160 (D.N.J. 1995) ("a "without fault" determination does not relieve Plaintiff of the responsibility to repay the debt. *See* 20 C.F.R. § 416.552. The SSA may waive recovery only where the claimant is "without fault" **and** where (1) recovery would defeat the purpose of Title XVI of the Social Security Act ("the Act"), or (2) repayment would offend equity and good conscience.") (citing 20 C.F.R. §§ 416.552, 416.553, 416.554); *Peralta ex rel. Peralta v. Barnhart*, 204 F. Supp. 2d 534, 537-38 (E.D.N.Y. 2002) (same).

decision of the Commissioner made after a hearing." *See also Califano v. Sanders,* 430 U.S. 99, 108 (1997); *Weinberger v. Salfi,* 422 U.S. 749, 767 (1975). And the Agency's regulations clearly set forth the steps of administrative review necessary to obtain a judicially reviewable final decision. *See generally* 20 CFR § 416.1400(a) *et seq.*. These encompass an appeal to an administrative law judge (ALJ), which becomes the final decision of the Commissioner unless the Appeals Council assumes jurisdiction. 20 CFR § 416.1455.

Despite the Court's directive to respond to the SSA's Motion to Dismiss, Mr. Cope does not demonstrate that he appealed the suspension of his benefits. Nor does he explain why no such appeal has been taken. He states that he is willing to take an administrative appeal, but complains that he has "had no response from them in any positive v[e]in at all." Complt. at 3.

The SSA's records confirm that administrative appeals have not been exhausted and that there is no judicially reviewable final decision. Mr. Cope received SSI benefits from September 2009 through January 2012. *See* Infiesta Decl. ¶ 2(a)-(b). In June 2011, he was notified that he had been overpaid in March 2011 because he was living in a medical care facility. *Id.* ¶ 2(c). In July 2011, he was advised that he was overpaid in February because he received and cashed two or more payments in a month. *Id.* ¶ 2(d). He received a similar notice in August regarding his March payment. *Id.* ¶ 2(e). In January 2012, Mr. Cope was advised that his SSI payments were suspended, effective March 1, 2010, because he had resources in excess of $2,000 from March 2010 onward. *Id.* ¶ 2(f). Plaintiff was advised that he was overpaid from March 2010 through January 2012 in the amount of $15,508.98, due to excess resources worth more than $2,000. *Id.* ¶ 2(g). Mr. Infiesta further maintains that all of the notices Mr. Cope received advised him that he could appeal the suspension of his benefits by requesting a case review, informal conference or formal conference. *Id.* ¶ 2. On March 19, 2012, Mr. Cope requested reconsideration of the suspension of his SSI benefits. *Id.* ¶ 2(h). On May 30, 2012, a notice was issued advising Mr. Cope that the initial decision was proper and that if he wished to appeal the decision to an ALJ, he could do so within 60 days. *Id.* ¶ 2(i). Mr. Cope did not file a request for a hearing with an ALJ. *Id.*

There is nothing I can do to resolve this impasse. If Mr. Cope wishes to challenge the suspension of his SSI benefits, he needs to exhaust his administrative remedies and appeal within the administrative agency until he has received a final order reviewable by this Court. Unless and until he does, I have no jurisdiction to consider Mr. Cope's objections.

### V. Conclusion

For the foregoing reasons, I will **DENY** the Plaintiff's motions for default judgment. I would conditionally grant the cross-motion of defendant St. Mary's to dismiss the Complaint for failure to effect service, subject to the Marshals' re-service of St. Mary's at the proper address. In light of my resolution of the remaining motions, however, such re-service of the currently operative Amended Complaint would be futile.

In addition, and in the alternative, I find that federal subject matter jurisdiction is lacking and/or that the Amended Complaint cannot be construed as supplying facts that would entitle the plaintiff to relief under any legally viable theory. Accordingly, I will **GRANT** the motion of Defendant St. Mary's to Dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). Finally, I will **GRANT** Defendant SSA's Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, because Plaintiff has not exhausted administrative remedies and has not obtained a final, judicially reviewable order.

Plaintiff is granted leave to file an amended complaint.[10]  He is reminded that there are no grounds here for default judgment and that he must state plainly and in brief the grounds upon which he is suing, or risk dismissal of his amended complaint WITH PREJUDICE.

An appropriate Order follows.

Dated: February 28, 2013

_____
HON. KEVIN MCNULTY
United States District Judge

---

[10]   The Third Circuit has adopted a particularly liberal approach in favor of permitting pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Indeed, where a complaint is dismissed on Rule 12(b)(6) grounds "a District Court *must* permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (emphasis added). The current complaint is technically an amended complaint, because prior versions were dismissed. Those dismissals, however, were on various technical and procedural grounds; this is the first time that plaintiff's pleading has been tested for legal sufficiency. For purposes of *Alston*, then, I treat it as if it were an initial pleading.